UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               :
EMERALDIAN LIMITED PARTNERSHIP,         :      08 Civ. 2991 (RJH)
                                                               :
                    Plaintiff,                   :
                                                               :
       -against-                                 :      **MEMORANDUM OPINION**
                                                               :      **AND ORDER**
                                                               :
WELLMIX SHIPPING LIMITED, GUANGZHOU :
 IRON & STEEL CORPORATION LTD. and   :
KAM KWAN LIMITED,                                :
                    Defendants.                  :
                                                               :
---------------------------------------------------------------x

      Defendant Kam Kwan Limited ("Kam Kwan") moves for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") or Rule E(4)(f) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule E") vacating this Court's March 16, 2009 *ex parte* order for process of maritime attachment and garnishment of its assets by plaintiff Emeraldian Limited Partnership ("Emeraldian") and dismissing plaintiff's Third Amended Verified Complaint ("Third Amended Complaint").  For the reasons set forth below, Kam Kwan's motion to vacate the Second Amended Attachment Order and to dismiss the complaint against it are granted.

**Factual and Procedural Background**

      On or about December 7, 2007, Emeraldian chartered the vessel M/V VINE (the "Vessel") to defendant Wellmix Shipping Limited ("Wellmix") for a voyage from Brazil to China.  The charter provided that all disputes between the parties would be resolved in the High Court of London, with English law to apply.

Upon its arrival at the port of loading in Brazil in January 2008, the Vessel was delayed for a period of time that plaintiff claims exceeded the allowed laytime. Plaintiff claims that as a result, Wellmix owed plaintiff $5,652,976.41 in demurrage, whereas Wellmix paid only $559,961.11. Accordingly, plaintiff claims that Wellmix owes it $5,093,015.30 in unpaid demurrage in breach of the charter between plaintiff and Wellmix.

On March 24, 2008, plaintiff initiated an action for maritime attachment against Wellmix pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule B") by filing a Verified Complaint seeking an *ex parte* order for process of maritime attachment and garnishment in the amount of $7,593,015.13, reflecting the principal amount of $5,093,015.30 allegedly owed to plaintiff by Wellmix, plus interest and costs.[1] (Verified Complaint ¶¶ 8-12) On March 24, 2008, this Court issued an *ex parte* Order (the "Attachment Order") directing the Clerk of this Court to issue a process of maritime attachment and garnishment in the amount of $7,593,015.13.

On November 12, 2008, plaintiff filed an Amended Verified Complaint ("Amended Complaint") adding defendant Guangzhou Iron & Steel Corporation Ltd. ("Guangzhou") and seeking an amended order of attachment and garnishment authorizing attachment of assets belonging to Guangzhou. In the Amended Complaint, plaintiff contended that Guangzhou was liable for Wellmix's breach because it guaranteed Wellmix's performance of the charter contract. (Amended Complaint ¶¶12-14) On November 13, 2008, this Court issued an Amended Order (the "Amended Attachment

---

[1] At some point in time, the plaintiff also initiated proceedings in London regarding this dispute, although it is unclear on the record before this Court when such proceedings were initiated.

Order") in the same amount as the original Attachment Order authorizing the attachment of assets belonging to Wellmix and Guangzhou.

On March 12, 2009, plaintiff filed a Third Amended Complaint under seal adding a third defendant, Kam Kwan, and seeking an amended order of attachment and garnishment authorizing attachment of assets belonging to Kam Kwan as well.[2]  In the Third Amended Complaint, plaintiff alleged that Kam Kwan is liable to the plaintiff because it is the alter ego of Guangzhou.  (*See* Third Amended Complaint ¶¶ 16-29)  On March 16, 2009, the Court entered a Second Amended Ex Parte Order (the "Second Amended Attachment Order") authorizing attachment of assets belonging to Wellmix, Guangzhou, and Kam Kwan.

Thereafter, an electronic wire transfer in the amount of $1,784,486.56 originating from Kam Kwan was attached by garnishee Bank of China pursuant to the Second Amended Attachment Order.  On June 11, 2009, Kam Kwan filed the present motion seeking vacation of the Court's Second Amended Attachment Order and dismissal of the plaintiff's Third Amended Complaint.  Kam Kwan argues that the Third Amended Claim fails to state a prima facie claim in admiralty under Rule 12(b)(6) or Rule E on the grounds that: (1) plaintiff's allegations of an alter ego relationship between Guangzhou and Kam Kwan are insufficient, and (2) Guangzhou's guarantee of Wellmix's performance of the contract is unenforceable by plaintiff.

**Motion to Vacate Attachment**

"[A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Aqua Stoli*

---
[2] The plaintiff had previously filed a Second Amended Verified Complaint, but no new attachment order was issued pursuant to the Second Amended Verified Complaint.

*Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d. 434, 445 (2d Cir. 2006)*; see also* Fed.R.Civ.P. Supp. R. E(4)(f). Rules B and E require the plaintiff to show "that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli,* 460 F.3d at 445.

Here, the only element at issue is whether the plaintiff has shown a "valid prima facie admiralty claim" against Kam Kwan. Because a claim based on a guarantee of performance of a maritime contract is maritime in nature, *C. Transport Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, No. 07 Civ. 893 (LAP), 2008 WL 2546180, at *2 (S.D.N.Y. June 19, 2008) (guarantees of *performance* of maritime contracts are maritime in nature, whereas guarantees of *payment* upon maritime contracts are not maritime in nature), whether plaintiff has shown a valid prima facie admiralty claim against Kam Kwan hinges on whether plaintiff has sufficiently alleged that Kam Kwan is the alter ego of Guangzhou, which allegedly guaranteed Wellmix's performance under the charter between plaintiff and Wellmix.

Ordinarily, corporate entities are presumed to be distinct. "Veil piercing is only appropriate 'where the parent used the corporate entity to perpetrate a fraud, or where the parent has so dominated and disregarded the corporate form's entity that the entity primarily transacted the parent's business rather than its own.'" *Kola Shipping Ltd. v. Shakti Bhog Foods Ltd.,* No. 08 Civ. 8817 (GEL), 2009 WL 464202, at *1 (S.D.N.Y. Feb. 24, 2009) (citing *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.,* 475 F.Supp.2d 275, 282 (S.D.N.Y. 2006)); *see also Williamson v. Recovery Ltd. P'Ship,* 542

F.3d 43, 53 (2d Cir. 2008).  The Second Circuit has identified several relevant factors in identifying the sufficiency of alter ego claims based on alleged corporate domination:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001); *see also Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*, 486 F.Supp.2d 261, 271-72 (S.D.N.Y. 2007).

To state a prima facie claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are insufficient.  *See Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.,* 622 F.Supp.2d 46, 54 (S.D.N.Y. 2009) (legal conclusions couched as facts are not facts and cannot substitute for facts) (internal citation omitted); *Navision Shipping Co. v. Dooyang Ltd.*, No. 08 Civ. 10051 (LLS), 2009 WL 877630, at *2 (S.D.N.Y. Apr. 1, 2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("formulaic recitation of the elements of a cause of action," unsupported by factual allegations, is insufficient to establish that the pleader is entitled to relief under Fed.R.Civ.P. 8(a)(2)).

There is some disagreement in this District as to the proper standard for determining whether a plaintiff has a valid prima facie admiralty claim for purposes of a motion to vacate under Rule E.  *See Budisukma Permai SDN BHD v. N.M.K. Products &*

*Agencies Lanka (Private) Ltd.*, 606 F.Supp.2d 391, 398 (S.D.N.Y. 2009) (citing cases). Specifically, there is some debate as to whether the prima facie standard is purely a pleading standard, or whether it also incorporates an evidentiary requirement that there be "reasonable grounds" for believing that the conditions for attachment exist. *Id.* This Court concludes that when a party alleged to be an alter ego of a maritime defendant brings a motion to vacate a maritime attachment under Rule E on the ground that the alter ego allegations are insufficient, the proper standard for evaluating such a claim is a "reasonable grounds" standard—that is, "the plaintiff must demonstrate that 'reasonable grounds' exist for the attachment . . . [This] involves review not only of the adequacy of the allegations in the complaint, but also of any evidence submitted by the parties." *Wajilam Exports*, 475 F.Supp.2d at 278-79 (internal citation omitted). In other words, "there must be a showing that a condition for veil piercing is likely to exist*." Kola Shipping,* 2009 WL 464202, at *2. "[C]ourts should not indiscriminately allow attachment of the property of every affiliate of a maritime defendant simply upon an allegation that such entity is associated with the proper defendant." *Id.*

Applying this standard, the Court finds that the plaintiff's allegations are insufficient to establish "reasonable grounds" for believing that Kam Kwan is an alter ego of Guangzhou. The Third Amended Complaint contains primarily conclusory allegations that merely recite the factors considered by courts in this Circuit when evaluating alter ego claims. For instance, all of the allegations in the Third Amended Complaint beginning with "Based upon the foregoing" are legal conclusions rather than factual allegations. (*See, e.g.,* Third Amended Complaint at ¶23 ("Guangzhou and Kam Kwan do not observe the necessary and appropriate corporate formalities and corporate

separation. . .")) Such allegations are insufficient to form the basis of a prima facie claim. *See Arctic Ocean,* 622 F.Supp.2d at 54; *Twombly*, 550 U.S. at 555.

The Third Amended Complaint does contain some factual allegations of alter ego liability; however, these allegations are insufficient to support a conclusion that there are reasonable grounds to believe that Kam Kwan is the alter ego of Guangzhou. The plaintiff's specific factual allegations that Kam Kwan is the alter ego of Guangzhou fall into two broad categories.

First, the plaintiff alleges as a factual matter that Kam Kwan is "a wholly owned subsidiary of Guangzhou" that Guangzhou "dominates and controls." (Third Amended Complaint at ¶ 17) Plaintiff supports this contention in its accompanying affidavit by pointing to documentary evidence that a Guangzhou holding company owns more than 99% of the shares in another holding company, Kam Kwan Enterprises (Holdings) Limited, which in turn owns more than 99% of the shares in Kam Kwan. (*See* Paré Affidavit, Exs. 3-6) Plaintiff also points to overlapping directors among the companies. (*Id.*) It appears, however, that there is only a single director overlap between Guangzhou and Kam Kwan, while seven directors of Guangzhou have no apparent role at Kam Kwan. (*See id.*, Ex. 3) In any event, these allegations of common ownership and management, while relevant to the alter ego analysis, are insufficient to support a finding that parties are alter egos of one another absent evidence of any conduct that is "inconsistent with a proper regard for corporate formalities and for the separate corporate identities of the various allegedly affiliated corporations." *See Kola Shipping,* 2009 WL 464202, at *2.

Second, the plaintiff attempts to show alter ego liability by alleging that Guangzhou improperly uses Kam Kwan as a purchasing division of Guangzhou. Specifically, the plaintiff alleges that "Kam Kwan acts as a 'buyer' for the described purpose of purchasing iron ore and iron ore pellets for and on behalf of Guangzhou, as the 'end-user' for the use of such iron ore and iron ore pellets. . . ," thereby "hold[ing] funds and making payments for purchases for Guangzhou" and "shelter[ing] [Guangzhou's] assets from its creditors in international business dealings."  (Third Amended Complaint at ¶19)  Plaintiff points to a specific long-term contract for iron ore and pellets wherein Kam Kwan is described as the "Buyer" and a "wholly owned subsidiary of 'End-User'" and wherein Guangzhou is described as the "End User."  (*See* Paré Affidavit, Ex. 7)  Again, these allegations do not describe any conduct that is necessarily inconsistent with proper regard for corporate formalities and for the separate corporate identities of Guangzhou and Kam Kwan.  Notably, plaintiff has not alleged that Guangzhou does not compensate Kam Kwan for these purchases, and nor has plaintiff made any other factual assertions that would support an inference that the buyer/end-user arrangement between Kam Kwan and Guangzhou was anything but an arms length transaction exhibiting due regard for proper corporate formalities.  To sustain a maritime attachment order based on such allegations would offend the presumption that corporate entities are distinct and subject the affiliates of companies that enter into maritime contracts to an unjustifiable risk of attachment of their assets in circumstances where their conduct was perfectly legitimate.

Thus, the Court finds that the plaintiff has not alleged facts sufficient to establish that there are reasonable grounds for believing that Kam Kwan is the alter ego of

Guangzhou.[3] Accordingly, Kam Kwan's motion to vacate the Second Amended Attachment Order is granted.[4]

**Motion to Dismiss**

Because the Second Amended Attachment Order was the only basis for asserting personal jurisdiction over Kam Kwan, a company that both parties agree is not present in the District, the Court's vacatur of the Second Amended Attachment Order requires that the Third Amended Complaint be dismissed as against Kam Kwan for lack of personal jurisdiction. *Deiulemar Compagnia di Navigazione S.p.A v. Dabkomar Bulk Carriers, Ltd.*, No. 05 cv. 8199 (Magistrate Judge Pitman), 2005 U.S. Dist. LEXIS 40783, at *27-28 (S.D.N.Y. Dec. 12, 2005); *see also Limonium Mar., S.A. v. Mizushima Marinera, S.A.*, 961 F.Supp. 600, 605 (S.D.N.Y. April 17, 1997) (jurisdiction over defendant was gained only through attached property); *Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 311 (2d Cir. 1970) (Rule B attachment is quasi in rem proceeding).

SO ORDERED.

Dated: New York, New York
       September 28, 2009.

_____
Richard J. Holwell
United States District Judge

---

[3] Even if the reasonable grounds standard set forth in *Wajilam Exports* did not apply here, the plaintiff's allegations would still be insufficient to establish a prima facie case under the pleading requirements set forth in *Twombly*, 550 U.S. 544 at 555-56, and re-confirmed in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed.2d. 868 (2009). The plaintiff's limited factual allegations regarding Kam Kwan's relationship to Guangzhou, without additional allegations of any conduct evidencing a disregard of corporate formalities or other improper behavior, are simply insufficient to sustain a claim of alter ego liability against Kam Kwan. *See SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06 Civ. 15375 (RJS), 2008 WL 4900770 at *3 (S.D.N.Y. Sept. 10, 2008) (applying *Twombly* to a Rule E motion to vacate an attachment for failure to state a valid prima facie admiralty claim).

[4] Having concluded that the Second Amended Attachment Order should be vacated, the Court need not address Kam Kwan's alternative argument that the plaintiff lacks standing to enforce Guangzhou's guarantee and therefore cannot pursue a claim against Guangzhou or Kam Kwan.